**FILED**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DEC 1 2 2017

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS OFFICE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Criminal No. 17-30199-DRH |
| | ) | |
| MICHAEL S. DAVENPORT, and | ) | Title 18, United States Code, Sections |
| CYNTHIA L. RAWLINSON, | ) | 1341, 1343, and 1349 |
| | ) | |
| Defendants. | ) | |

## INDICTMENT

**THE GRAND JURY CHARGES:**

### COUNT ONE
### Conspiracy to Commit Wire Fraud – 18 U.S.C. § 1349

1.      Beginning in approximately January 2009, and continuing until at least October 5, 2016, defendant MICHAEL S. DAVENPORT, owned and operated a telemarketing business located in Santa Barbara, California.  DAVENPORT operated this telemarketing business under several different names, including:  MDSQ Productions, LLC; Housing Standard, LLC; Anchor House Financial, American Standard; American Standard Online; and Your American Standard Online. (For ease of reference, this company is referred to as "American Standard" throughout the remainder of this document, regardless of what specific name the company was using at any particular time.)

2.      During the last few years of its existence, American Standard operated from two locations:  401 N. Milpas Street, Suites D & E, Santa Barbara, California 93101; and 115 N. V. Street, Lompoc, California 93436.

3.      Defendant CYNTHIA L. RAWLINSON was employed by American Standard beginning in approximately 2009.  RAWLINSON began her employment as a salesperson, but

was eventually promoted to the position of Sales Manager of the Santa Barbara office. RAWLINSON also occasionally fielded calls received by the American Standard's Customer Service Department.

4.      American Standard was a scam which defrauded thousands of consumers throughout the United States.

5.      American Standard purported to be a program through which customers could purchase houses at prices substantially below market value.

6.      American Standard generated business by placing advertisements in various publications. The majority of customer calls received by American Standard came in response to advertisements place on Craigslist.

7.      The Craigslist ads placed by American Standard represented that certain houses were available for sale or rent at favorable prices. The ads did not provide the addresses of the houses. The ads directed the readers to call American Standard for more information about the houses.

8.      The Craigslist ads placed by American Standard were false and misleading. American Standard had no information about the specific houses described and shown in the Craigslist ads. American Standard did not have the addresses of these houses, nor did it have any information that these houses were available for sale or rent at the prices shown in the ads.

9.      When the customers called American Standard, the salespersons followed a script that was provided by the company.

10.      When the customers asked about the houses shown in the Craigslist ads, the salespersons told them that they would have to purchase American Standard's listing of houses in order to obtain information about the houses shown in the ads.

11.     The salespersons told the customers that American Standard helps homebuyers and renters find homes at prices substantially below market value. The salespersons said that the reason these homes were available at prices below market value was because the homeowners were in financial distress and/or the house were in "pre-foreclosure." The salespersons further told the customers that they could simply "take over the existing mortgage payments" on the houses, and that the deeds to the houses would be transferred to the customers.

12.     The salespersons further represented that, for a fee of $199, the customers would be given access to American Standard's list of houses that were in pre-foreclosure or financial distress. The salespersons also told the customers that the list contained numerous houses that were available in the areas where the customers were seeking homes.

13.     The salespersons' statements that the houses on American Standard's list were in pre-foreclosure or financial distress, and the houses were available at prices below market value, were false and misleading. A substantial number of the addresses contained on American Standard's listing were fictional and/or no houses existed at the locations indicated. In numerous other cases, although the houses actually did exist, they were not in pre-foreclosure or financial distress, and the houses were not available for purchase at prices below market value.

14.     When customers asked where American Standard obtained the information about the houses shown on its list, the salespersons stated that individual homeowners asked that their houses be included on the list. In addition, the salespersons stated that American Standard obtained information about the houses on its list from banks and title companies.

15.     The salespersons' statements about the sources of the houses shown in the American Standard list were false and misleading. Very few homeowners ever asked that their houses be listed with American Standard. In addition, American Standard did not obtain house

3

listings from banks and title companies.   Instead, in many instances, the information about particular houses on the American Standard list were completely fabricated.   In many other instances, the information on the American Standard list was simply copied from other real estate listing sources.

16.     When the customers asked what the $199 fee was for, the salespersons responded that, in addition to access to American Standard's list of houses, the fee covered title searches and deed transfers.

17.     The salespersons' statements that the $199 fee covered title searches and deed transfers were false and misleading.   American Standard rarely, if ever, performed title searches or deed transfers for its customers, because the customers rarely, if ever, located houses they could purchase using the American Standard list.   In reality, the $199 fees were used to pay the operational costs of American Standard, including commissions paid to the salespersons on each sale, and profits to the owner of American Standard, defendant MICHAEL S. DAVENPORT.

18.     After the customers paid the $199 fees, they were given the telephone number of American Standard's Customer Service Department.   The customers were told to contact Customer Service if they had any questions about the American Standard list or how to use the program.

19.     If the customers still expressed an interest in houses they had seen in the Craigslist ads, the Customer Service Department sent the customers an e-mail stating that the houses shown in the Craiglist ad were no longer available.

20.     The purported purpose of the Customer Service Department was to assist customers in using the American Standard list to locate houses to purchase.   In reality, the employees of the Customer Service Department spent most of their time fielding phone calls from angry customers

4

and homeowners whose houses had been included on American Standard's list without their permission.

21.     The employees who worked in the Customer Service Department were given standard "Rebuttals" to use in answering questions from customers regarding why the houses on the American Standard list were not available for sale at below market prices. For example, when customers complained that certain houses shown on the list did not exist, the Customer Service representatives were instructed to say that some customers wanted to purchase vacant lots. When customers complained that they had gone to certain houses and the homeowners had stated that their houses were not for sale, the Customer Service representatives were instructed to say that homeowners are usually too embarrassed to talk about their financial distress when approached, and that the proper way to initiate contact was by using form letters provided on American Standard's website.

22.     American Standard attempted to avoid paying refunds to customers. To qualify for a refund, American Standard typically required its customers to meet conditions that were virtually impossible to satisfy. For example, American Standard required customers to mail in letters, signed by the owners of five of the houses on the listing, stating that the customers had viewed their houses. These letters were very difficult to obtain from homeowners who had not placed their houses on American Standard's list and were not interested in selling their homes. These letters were impossible to obtain when the addresses on the list did not exist.

23.     Some customers complained to their credit card companies that they had been defrauded and requested that their money be returned through "charge-backs." When the credit card companies contacted American Standard in response to their customers' inquiries, American

5

Standard attempted to defeat these charge-backs so that they could retain the fees paid by the customers.

24.    The conspiracy and scheme to defraud operated from approximately January 1, 2009, through at least October 5, 2016.  During this period, American Standard victimized over 100,000 people and defrauded these individuals out of more than $27,000,000.  The victims were located in all fifty of the United States and the District of Columbia.  At least 104 victims of the scam were located within the Southern District of Illinois and resided in the following counties: St. Clair, Madison, Clark, Clinton, Cumberland, Edwards, Effingham, Fayette, Franklin, Gallatin, Hardin, Jackson, Jasper, Jefferson, Johnson, Marion, Monroe, Pulaski, Richland, Saline, Union, and Williamson.  In addition, the American Standard's list included at least 534 houses located in the Southern District of Illinois.

25.    As the owner of American Standard, defendant MICHAEL S. DAVENPORT oversaw the operations of the company and controlled the revenues and profits of the company. DAVENPORT was aware of the false and misleading statements by American Standard's employees described above.    These false and misleading statements were made with DAVENPORT's approval and at his direction.

26.    As a salesperson for American Standard, CYNTHIA L. RAWLINSON used the false and misleading statements described above to make sales.  Later, when she was promoted to Sales Manager, RAWLINSON supervised American Standard salespersons in the Santa Barbara office as they used the false and misleading statements described above to make sales.  When she assisted in the Customer Service Department, RAWLINSON misled and lied to customers who called and inquired why the houses contained in the American Standard list were not available to be purchased.

27.     Beginning in approximately January 2009, and continuing until at least October 5, 2016, in the Southern District of Illinois, and elsewhere, the defendants,

MICHAEL S. DAVENPORT, and
CYNTHIA L. RAWLINSON,

and others both known and unknown to the Grand Jury, did knowingly and willfully conspire to commit certain offenses against the United States, namely:

A.     To devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations and promises, and for the purpose of executing the scheme, and attempting to do so, to knowingly cause mail matter and other documents to be sent from, and delivered to, addresses located throughout the United States, including the Southern District of Illinois, in violation of Title 18, United States Code, Section 1341; and

B.     To devise and participate in a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations and promises, and for the purpose of executing the scheme, and attempting to do so, to knowingly cause interstate telephone calls, credit card transactions, and other signals to be transmitted in interstate commerce by means of wire and radio communications, including interstate telephone calls between employees of American Standard and customers located throughout the United States, including the Southern District of Illinois, in violation of Title 18, United States Code Section 1343.

28.     In furtherance of and as a foreseeable consequence of the conspiracy, the conspirators caused documents to be sent and delivered by U.S. Mail, to and from addresses located throughout the United States, including the Southern District of Illinois.

29.     In furtherance of and as a foreseeable consequence of the conspiracy, the conspirators caused telephone calls and credit card transactions to be conducted via interstate wire

7

communications between California and locations throughout the United States, including the Southern District of Illinois.

All in violation of Title 18, United States Code, Section 1349.

The offense occurred in connection with the conduct of telemarketing, and the offense victimized ten or more persons over the age of 55, in violation of the SCAMS Act, punishable under Title 18, United States Code, Section 2326.

## COUNT TWO
## Wire Fraud – 18 U.S.C. § 1343

1.      Paragraphs 1 through 26 of Count One of this indictment are realleged here.

2.      On or about May 6, 2015, at Union County, within the Southern District of Illinois, defendants

MICHAEL S. DAVENPORT, and
CYNTHIA L. RAWLINSON,

for the purpose of executing the scheme to defraud charged in Count One, and attempting to do so, knowingly did cause to be transmitted by means of a wire communication in interstate commerce, from Union County, Illinois, to California, certain signals, namely a telephone conversation during which an American Standard salesperson used false and misleading statements to cause a victim with the initials S.B. to purchase access to the American Standard list of houses for $199;

In violation of Title 18, United States Code, Section 1343.

8

## COUNT THREE
### Wire Fraud – 18 U.S.C. § 1343

1.      Paragraphs 1 through 26 of Count One of this indictment are realleged here.

2.      On or about June 19, 2015, at St. Clair County, within the Southern District of Illinois, defendants

### MICHAEL S. DAVENPORT, and
### CYNTHIA L. RAWLINSON,

for the purpose of executing the scheme to defraud charged in Count One, and attempting to do so, knowingly did cause to be transmitted by means of a wire communication in interstate commerce, from St. Clair County, Illinois, to California, certain signals, namely a telephone conversation during which an American Standard salesperson used false and misleading statements to cause a victim with the initials S.J. to purchase access to the American Standard listing of houses for $199;

In violation of Title 18, United States Code, Section 1343.

## COUNT FOUR
### Wire Fraud – 18 U.S.C. § 1343

1.      Paragraphs 1 through 26 of Count One of this indictment are realleged here.

2.      On or about August 1, 2015, at St. Clair County, within the Southern District of Illinois, defendants

MICHAEL S. DAVENPORT, and
CYNTHIA L. RAWLINSON,

for the purpose of executing the scheme to defraud charged in Count One, and attempting to do so, knowingly did cause to be transmitted by means of a wire communication in interstate commerce, from St. Clair County, Illinois, to California, certain signals, namely a telephone conversation during which an American Standard salesperson used false and misleading statements to cause a victim with the initials E.B. to purchase access to the American Standard listing of houses for $199;

In violation of Title 18, United States Code, Section 1343.

## COUNT FIVE
### Wire Fraud – 18 U.S.C. § 1343

1.    Paragraphs 1 through 26 of Count One of this indictment are realleged here.

2.    On or about February 11, 2016, at Edwards County, within the Southern District of Illinois, defendants

MICHAEL S. DAVENPORT, and
CYNTHIA L. RAWLINSON,

for the purpose of executing the scheme to defraud charged in Count One, and attempting to do so, knowingly did cause to be transmitted by means of a wire communication in interstate commerce, from Edwards County, Illinois, to California, certain signals, namely a telephone conversation during which an American Standard salesperson used false and misleading statements to cause a victim with the initials C.O. to purchase access to the American Standard listing of houses for $199;

In violation of Title 18, United States Code, Section 1343.

11

## COUNT SIX
### Wire Fraud – 18 U.S.C. § 1343

1.      Paragraphs 1 through 26 of Count One of this indictment are realleged here.

2.      On or about March 4, 2016, at Edwards County, within the Southern District of

Illinois, defendants

MICHAEL S. DAVENPORT, and
CYNTHIA L. RAWLINSON,

for the purpose of executing the scheme to defraud charged in Count One, and attempting to do

so, knowingly did cause to be transmitted by means of a wire communication in interstate

commerce, from Edwards County, Illinois, to California, certain signals, namely a telephone

conversation during which an American Standard salesperson used false and misleading

statements to cause a victim with the initials S.F. to purchase access to the American Standard

listing of houses for $199;

In violation of Title 18, United States Code, Section 1343.

## COUNT SEVEN
## Mail Fraud – 18 U.S.C. § 1341

1.      Paragraphs 1 through 26 of Count One of this indictment are realleged here.

2.      On or about May 10, 2016, at Madison County, within the Southern District of

Illinois, defendants

MICHAEL S. DAVENPORT, and
CYNTHIA L. RAWLINSON,

for the purpose of executing the scheme to defraud described in Count One, and attempting to do

so, knowingly did cause to be placed in an authorized depository for mail matter an envelope

containing an American Standard Online form letter, that envelope being addressed to

"Homeowner" at an address on East 7th Street in Alton, IL 62002.

In violation of Title 18, United States Code, Section 1341.

13

## FORFEITURE ALLEGATION

As a result of the commission of the offense described in Count 1 of this Indictment,

### MICHAEL S. DAVENPORT

defendant herein, shall forfeit to the United States,  pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all property constituting, or derived from, any proceeds said defendant obtained, directly or indirectly, as a result of said violation.  The property to be forfeited includes, but is not limited to:

$853,210.11 in United States currency seized from Priority Payment Systems, which funds were owned by or being held on behalf of or under the names of Michael Davenport, Susan Quinn, American Standard Online, Housing Standard, LLC, Anchor House Financial, MDSQ Productions LLC, Housing Standard Com, American Standard Online Com, and Your American Standard;

$104,000.00 in United States currency seized from Michael Davenport at the Bill and Hillary Clinton National Airport in Little Rock, Arkansas; and

United States funds of $27,855,821.00.

**Substitute property**

In the event that any of the above-listed property or funds, as a result of any acts or omissions of the defendant, (1) cannot be located upon the exercise of due diligence, (2) has been transferred or sold to, or deposited with, a third party, (3) has been placed beyond the jurisdiction of the court, (4) has been substantially diminished in value, or (5) has been commingled with other property which cannot be divided without difficulty, the defendant shall forfeit any other of his property up to the value of the property, pursuant to Title 18, United States Code, Section 853(p).

In addition, should any of the specific property identified in this indictment be found in whole or in part to be not directly forfeitable, the United States shall, pursuant to Title 18, United States Code, Section 853(p), seek the forfeiture of said property as substitute property instead.

DONALD S. BOYCE
United States Attorney

SCOTT A. VERSEMAN
Assistant United States Attorney

Recommended bond:  $10,000 Unsecured